UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                          CASE NO. 05-21605

ROY FRISCHHERTZ CONSTRUCTION                    SECTION "B"
COMPANY, INC.

                                                CHAPTER 11
        DEBTOR                                  SMALL BUSINESS

## REASONS FOR ORDER

This matter came on for hearing on the Second Application for Allowance of

Interim Compensation and for Reimbursement of Expenses (P-179) filed by special

counsel for the debtor, Shields, Mott & Lund, LLP, and the objection thereto (P-187) filed

by the Jefferson Parish Clerk of Court (the "Clerk of Court").  For the reasons set forth

below, the application as to the expenses incurred with respect to the litigation between

the debtor and the Clerk of Court is granted as to the amounts incurred solely on behalf of

the debtor.  As to the $11,802.50 in attorneys' fees and $386.00 in costs incurred on

behalf of the Ohio Casualty Insurance Company ("Ohio Casualty"), the application is

denied.

## I.      Background Facts

The debtor, Roy Firschhertz Construction Company, Inc., filed a petition for

Chapter 11 protection under the United States Bankruptcy Code found at 11 U.S.C. §§101

*et seq.* on December 6, 2005.[1]  On that same date, Shields, Mott & Lund, LLP ("SML")

---

[1]  Because this case was filed after the October 17, 2005 effective date of the Bankruptcy
Abuse Prevention and Consumer Protection Act ("BAPCPA") and is therefore subject to the

1

filed an application for employment as special counsel for the debtor in possession

pursuant to § 327(a) of the Code.[2]  That application was granted by order dated December

8, 2005 that allowed SML to represent the debtor in connection with disputes related to

certain executory contracts for construction to which the debtor was a party at the time of

the Chapter 11 filing.  On August 8, 2006, SML filed its Second Application of Attorney

for Allowance of Interim Compensation and for Reimbursement of Expenses.[3]  The

application requested fees and costs related to several different construction projects that

the debtor had been engaged to work on prior to filing for Chapter 11.  One objection was

filed with respect to the fees incurred over the contract dispute on a project for the

renovation of the Jefferson Parish Clerk of Court's office space.[4]  At the hearing the

parties requested the opportunity to brief further the issues.

In essence the objection noted that the fees sought in the fee application in

connection with the Clerk of Court project were not only fees and costs SML had charged

to the debtor, but also fees that should be properly charged to the debtor's surety, Ohio

Casualty, which was also represented by SML.  After the debtor filed for Chapter 11

protection, it commenced an adversary proceeding against the Clerk of Court on February

---

provisions of BAPCPA, all references to the Bankruptcy Code in this opinion will refer to the
Code as amended by BAPCPA.

[2] (P-5).

[3] (P-179).

[4] (P-187).

7, 2006.[5]  On April 11, 2006 the Clerk of Court filed suit against Ohio Casualty in the 24th

Judicial District Court for the Parish of Jefferson, State of Louisiana.  Ohio Casualty had

the case removed to the U.S. District Court for the Eastern District of Louisiana, which

subsequently referred the case to this court.[6]  Ohio Casualty then filed a motion for

substantive consolidation with the adversary proceeding commenced by the debtor, which

was granted.[7]  The fees that the Clerk of Court complains are attributable to Ohio

Casualty are fees incurred in the removal of the case from the 24th JDC to this court and

the subsequent consolidation of the two adversary proceedings.

## II.    Legal Analysis

### A.    Right to Payment Under Sections 327 and 330.

Under the Bankruptcy Code, an attorney for the debtor must file an application to

be employed by the debtor under § 327(a).[8]  Approval of an application for employment

of an attorney under § 327(a) gives rise to a right to compensation under § 330(a)(1).[9]

---

[5]  Adversary Proceeding No. 06-1028.

[6]  Adversary Proceeding No. 06-1244.

[7]  Both adversary proceedings are now under Case No. 06-1028

[8] 11 U.S.C. § 327(a) reads:

Except as otherwise provided in this section, the trustee, with the court's
approval, may employ one or more attorneys, accountants, appraisers,
auctioneers, or other professional persons, that do not hold or represent an
interest adverse to the estate, and that are disinterested persons, to represent or
assist the trustee in carrying out the trustee's duties under this title.

[9]  11 U.S.C. § 330(a)(1) reads in pertinent part:

Thereafter, the attorney may request compensation for his efforts at 120 day intervals

under § 331.[10]  In this case, SML properly filed an application for employment and

properly filed an application for interim compensation.  The court notes, however, that the

court's approval of SML's employment encompassed employment by the debtor only.

The court did not approve, nor is it the court's business to approve, under § 327(a),

SML's employment by Ohio Casualty.  As such, it is not proper for the court to award

attorney's fees and costs under §§ 330(a) and 331 for work done by SML on behalf of

Ohio Casualty, because § 330(a) applies specifically to professional persons employed

under § 327.

Attorney's fees and costs that have been awarded by the court pursuant to § 330(a)

are given administrative expense status by § 503(b)(2).  Administrative expense status is

important because administrative expenses are given priority over most other types of

---

After notice to the parties in interest and the United States Trustee and a
hearing, and subject to sections 326, 328, and 329, the court may award to a
trustee. . . or a professional person employed under section 327 or 1103--
(A)  reasonable compensation for actual, necessary services rendered by the
trustee. . . professional person, or attorney and by any paraprofessional person
employed by any such person; and
(B)  reimbursement for actual, necessary expenses.

[10]  11 U.S.C. § 331 reads:

A trustee, an examiner, a debtor's attorney, or any professional person
employed under section 327 or 1103 of this title may apply to the court not more
than once every 120 days after an order for relief in a case under this title, or
more often if the court permits, for such compensation for services rendered
before the date of such an application or reimbursement for expenses incurred
before such date as is provided under section 330 of this title.  After notice and a
hearing, the court may allow and disburse to such applicant such compensation
or reimbursement.

4

claims under § 507(a)(2), and in a Chapter 11 case, administrative expenses not paid sooner must be paid in cash on the effective date of the plan unless the holder of the claims has agreed otherwise.[11]

SML argues that because an indemnity agreement exists between the debtor and Ohio Casualty, which provides in part that the debtor is to indemnify Ohio Casualty for its attorney's fees and costs related to the surety bonds the debtor obtained from Ohio Casualty, the debtor is liable for Ohio Casualty's fees, and thus, it is proper for the court to award payment of the fees through § 330(a). The court disagrees. To illustrate this, the court compares the instant situation to what would happen if Ohio Casualty were represented by a law firm other than SML. In that case, the other law firm would bill Ohio Casualty for its services, Ohio Casualty would presumably pay the bill, and then it would look to the debtor for payment under the terms of the indemnity agreement it had entered into with the debtor. If there were no questions as to the scope of the indemnity agreement, and the debtor agreed it was responsible to pay the bill, then the amount of the bill would become a part the claim Ohio Casualty has already filed against the debtor.[12] No determination of secured status as to the claim of Ohio Casualty has been made, so the treatment that claim would receive is uncertain, but at best, the claim would be paid as a

---

[11]  11 U.S.C. § 1129(a)(9).

[12]  Ohio Casualty has filed claim number 39 against the debtor on the basis of the surety bonds it has executed on behalf of the debtor. Ohio Casualty asserts the claim is secured by contract balances retained by certain of the obligees on those bonds. The secured status of the claim has not been brought before the court at this time.

secured claim through the debtor's plan of reorganization at some point in the future. The

claim would not be treated as an administrative claim eligible to be paid as interim

compensation before any other creditors in the case receive payment. The court sees no

reason why this claim should be given priority treatment because the same attorneys

represent the debtor and Ohio Casualty in this instance. The court finds no basis for the

approval of attorneys' fees for Ohio Casualty under § 330(a); accordingly, SML's motion

for payment under that section is denied.

**B.      Right to Payment Under Section 503(b)(3)(D).**

Although SML did not specifically raise this issue at the hearing or in its

application, in its brief it raised the alternative argument that it should be granted

attorney's fees and costs for its work for Ohio Casualty under the "substantial

contribution" provision of § 503(b)(3)(D), which reads:

> After notice and a hearing, there shall be allowed administrative expenses,
> other than claims allowed under section 502(f) of this title, including–
> (3) the actual, necessary expenses, other than compensation and
> reimbursement specified in paragraph (4) of this subsection, incurred by–
> (D) a creditor, an indentured trustee, an equity security holder, or a
> committee representing creditors or equity security holders other than a
> committee appointed under section 1102 of this title, in making a
> substantial contribution in a case under chapter 9 or 11 of this title.

The United States Fifth Circuit Court of Appeal has held that the development of a

concrete standard of substantial contribution is best left to a case by case analysis wherein

the bankruptcy judge should make specific and detailed findings on the substantial

6

contribution issue.[13]  The Fifth Circuit has issued some general guidance, however, as to

the nature of a substantial contribution:

> The policy aim of authorizing fee awards to creditors is to promote
> meaningful creditor participation in the reorganization process.  Thus, a
> claimant is entitled to administrative fees and expenses if these costs are
> incurred in making a substantial contribution to a Chapter 9 or 11 case.
> Generally, services which make a substantial contribution are those which
> foster and enhance, rather than retard or interrupt the progress of
> reorganization. . . .  Though legislative history is of little help in divining a
> precise measure of substantial contribution, decisions from other circuits
> appear to distinguish between creditors' actions that 'incidentally' benefit
> the estate and creditors' actions that directly and demonstrably benefit the
> estate.[14]

The Fifth Circuit goes on to emphasize that, "the benefits, if any, conferred upon an estate

are not diminished by selfish or shrewd motivations," and that the phrase "substantial

contribution" in § 503 means a contribution that is "considerable in amount, value or

worth."[15]  The court also states that when a bankruptcy judge is determining whether

there has been a substantial contribution, he should, "at a minimum. . . weigh the cost of

the claimed fees and expenses against the benefits conferred upon the estate which flow

directly from those actions.  Benefits flowing to only a portion of the estate or to limited

classes of creditors are necessarily diminished in weight."[16]

Recent decisions by lower courts in the Fifth Circuit that have addressed

---

[13]  *In the Matter of DP Partners Ltd. Partnership,* 106 F.3d 667, 673 (5th Cir. 1997).

[14]  *DP Partners* at 672.

[15]  *DP Partners* at 673.

[16]  *DP Partners* at 673.

substantial contribution requests include *In re Condere Corp.,* 251 B.R. 693 (Bankr.S.D.Miss. 2000), where the court found that a creditor had made a substantial contribution and approved fees and costs of $76,713.35, where the creditor led efforts to locate a viable purchaser for the debtor and thereby boosted the payout on approximately $24 million in allowed claims from 25 cents on the dollar to 65 cents on the dollar.

The court in *In re Datavon,* 303 B.R. 119 (Bankr.N.D.Tex. 2003), awarded $22,917.10 under § 503(b)(3)(D) for work done relating to the formation of the creditors' committee, contesting an employee retention plan, participating in the bidding process, negotiating with creditors over claims, and involvement in the plan process. The *Datavon* court also noted that in that case the debtor, the unsecured creditors committee, and a court-appointed expert all testified that a substantial benefit had been conferred upon the estate, and that the benefit outweighed the fees incurred.

The *In re American Plumbing & Mechanical, Inc.,* 327 B.R. 273 (Bankr.W.D.Tex. 2005) court analyzed § 503(b)(3)(D) thoroughly, concluding that the burden is on the applicant to prove by a preponderance of the evidence that he made a substantial contribution.[17] The court further held that a substantial contribution applicant must show that his services have some causal relationship to the contribution and established that a but-for test is a part of establishing a causal relationship.[18] The *American Plumbing* court also stated that expected or routine activities in a Chapter 11 case do not constitute a

---

[17] *American Plumbing* at 279.

[18] *American Plumbing* at 279-80.

8

substantial contribution.[19]

*In re Mirant Corp.,* 354 B.R. 113 (Bankr.N.D.Tex. 2006) set forth a list of factors

that the court found relevant to an analysis of whether a substantial contribution had been

made.  It included:  1) a showing of benefit to the estate; 2) whether the services involved

in the contribution were undertaken just for the applicant or for the benefit of all parties in

the case;[20]  3) whether the applying party would have done the same thing absent the

expectation of compensation from the bankruptcy court; 4) whether the benefit conferred

through the party's "substantial contribution" exceeds the cost the party seeks to assess

against the estate; 5) whether the efforts of those seeking compensation were duplicative

of those undertaken by statutory fiduciaries; 6) will the applicant suffer a greater loss

from the debtor's bankruptcy than do its peers where that loss resulted from expenditures

by the applicant that benefitted those same peers; and 7) has the applicant's conduct

caused a negative effect on the case that offsets the value of the applicant's contribution.[21]

The court looks to these cases for guidance in assessing SML's contention that its

work for Ohio Casualty in removing the state court suit to the bankruptcy court and

consolidating it with the pending adversary proceeding constitutes a substantial

contribution within the meaning of § 503(b)(3)(D).  SML represented to the court at the

---

[19] *American Plumbing* at 283.

[20] The *Mirant* court recognized, as does this court, that the 5th Circuit in *DP Partners* does not require a party requesting reimbursement for expenses under § 503(b)(3)(D) to have acted selflessly or in a disinterested manner.

[21] *Mirant* at 132-36.

9

hearing on this application that Ohio Casualty had contributed to the estate's resources

because it had settled another construction litigation claim by paying $200,000 although it

was only obligated on that particular bond in the amount of $50,000, thus, conferring a

benefit in the amount of $150,000 to the estate.[22]  The exact details of that transaction,

however, were not clear to the court from the statements on the record, and SML did not

include any further details in its brief on this issue.  The court did not infer from the

statements of counsel that the $150,000 benefit of which counsel spoke was in any way

related to the fees sought here; rather, the court understood counsel's statement to be a

general statement that Ohio Casualty is cooperating with the debtor to settle various

claims on the bonds executed by Ohio Casualty.  While this is certainly beneficial to the

debtor's estate, there has been no showing of any "causal relationship to the alleged

substantial contribution."[23]

In its brief, SML stated the following in support of its position:

The Debtor's estate (and by extension, the position of the creditors)
received a "significant and demonstrable benefit" in that it was spared the
unnecessary legal expenses and fees that the surety would have incurred to
defend the legal action arising from the Debtor's performance on its
contract with the Clerk of Court, which fees and expenses would have been
ultimately borne by the Debtor under the terms of the indemnity agreement.

Likewise, the quick resolution of the state court action prevented the Debtor
from incurring its own legal fees and expenses.  Had the action not been
successfully removed, transferred, and consolidated with the already-
pending adversary proceeding, the Debtor would have been forced to retain

---

[22]  Recording of hearing held on August 30, 2006.

[23]  *American Plumbing* at 280.

10

counsel to defend its interests in the state court action, by way of
intervention if necessary. Furthermore, the Debtor's estate directly
benefitted from the Applicant's sound legal representation because any
judgment against Ohio Casualty would have ultimately been borne by the
Debtor under the terms of the indemnity agreement.[24]

These generic statements by SML are not sufficient for the court to make a finding that a

substantial contribution was made by Ohio Casualty that would warrant an award of

attorneys' fees and costs. "Conclusory statements cannot satisfy the applicant's burden of

proof. Thus, courts will not grant substantial-contribution claims when the applicant

cannot articulate a benefit conferred upon the estate."[25] Additionally, the actions of Ohio

Casualty in seeking to remove the state court lawsuit do not impress the court as being

outside "expected or routine activities," and as such, they do not constitute a substantial

contribution.[26] Although Ohio Casualty's actions may have "incidentally benefit[ted] the

estate," they did not "directly and demonstrably benefit the estate."[27] Therefore, the

motion for fees and costs under § 503(b)(3)(D) is denied.

### III.    Conclusion

For the reasons stated, the application as to the expenses incurred with respect to

the litigation between the debtor and the Clerk of Court is granted as to the amounts

---

[24] Brief in Support of Second Application for Allowance of Interim Compensation and
for Reimbursement of Expenses (P-195) at p. 8.

[25] *American Plumbing* at 279.

[26] *American Plumbing* at 283.

[27] *DP Partners* at 672.

11

incurred solely on behalf of the debtor.  As to the $11,802.50 in attorneys' fees and

$386.00 in costs incurred on behalf of the Ohio Casualty Insurance Company ("Ohio

Casualty"), the application is denied.

New Orleans, Louisiana, March 2, 2007.

J. A. Brown

Jerry A. Brown
U.S. Bankruptcy Judge