UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                           CASE NO. 05-21605

ROY FRISCHHERTZ CONSTRUCTION CO.                                    SECTION "B"

    DEBTOR                                                                             CHAPTER 11

## REASONS FOR ORDER

This matter came on for hearing on June 27, 2007 on the fourth interim fee application (P-464) of special counsel for the debtor, and the opposition thereto filed by creditors The Audubon Commission and Gandolfo Kuhn (P-486). For the reasons set forth below the court grants the application.

**I.    Background Facts**

Roy Frischhertz Construction Company, Inc. ("RFCC"), the debtor in this case, filed a Chapter 11 petition under title 11 of the United States Code on December 6, 2005. On that same date, the law firm of Shields, Mott, Lund, LLP ("SML") filed an application seeking court approval for its employment as special counsel to the debtor with respect to litigation contemplated by the debtor regarding several construction contracts that the debtor was a party to at the time of the filing of the Chapter 11 petition.[1] The court approved the application in an order dated December 8, 2005.[2] SML stated in its application that it had represented the debtor in these matters prior to the filing of the Chapter 11 petition; SML did not disclose, however, that it had also represented Ohio Casualty Insurance Company ("Ohio Casualty") the surety

---

[1] (P-5).

[2] (P-8).

1

company that had executed payment and performance bonds for at least three of the debtor's construction contracts.[3] Ohio Casualty filed a proof of claim in the debtor's bankruptcy related to the bonds Ohio Casualty had executed with RFCC on the above-mentioned construction contracts, but in doing so it was represented by counsel other than SML.[4] Additionally, Ohio Casualty has filed other pleadings related to claim transfers in the debtor's bankruptcy case, but again it was represented by counsel other than SML for those purposes.[5]

On August 8, 2006 SML filed its second interim application for fees, and an objection to that application was filed by Jon A. Gegenheimer, the Clerk of Court for the Parish of Jefferson, and the defendant in one of the adversary proceedings previously mentioned, No. 06-1011. The objection was based on SML's including in the fees to be paid by the debtor certain fees that were actually incurred for work done solely on behalf of Ohio Casualty, which SML was also representing. In that objection Gegenheimer did not object to the dual representation by SML. On March 2, 2007 the court issued an order and accompanying reasons disallowing the fees SML claimed for work that was done on behalf of Ohio Casualty. On March 12, 2007 SML

---

[3] Two of the contracts - one involving construction/renovation for the Clerk of Court for the Parish of Jefferson and the other for the Audubon Commission - are involved in adversary proceedings in this court for which SML has been appointed special counsel for the debtor in possession. See adversary numbers 06-1011 and 06-1028. The third contract, involving the Harvey fire station in Harvey, Louisiana was settled out of court.

[4] Ohio Casualty filed proof of claim number 39, which has subsequently been amended several times to reflect payments made on some of the 20 different bonds Ohio had executed in connection with several of the debtor's construction projects prior to the filing of the Chapter 11 petition.

[5] Ohio Casualty has also made payments under the bonds to some of the subcontractors and suppliers of the debtor who had filed proofs of claim. For several of those claims Ohio Casualty has filed a notice of transfer of claim, and the court has ordered Ohio Casualty substituted for the original claimant.

filed a supplemental disclosure under Bankruptcy Rules 2014 and 2016 outlining its specific relationship with Ohio Casualty, i.e., that prior to the debtor's bankruptcy, SML had represented Ohio Casualty on matters unrelated to RFCC, that due to the agreements between RFCC and Ohio Casualty executed pre-petition, RFCC had a duty to defend Ohio Casualty in matters related to the construction contracts, that Ohio Casualty has the right to seek indemnity from RFCC on the bonds, and that Ohio Casualty had agreed to assist RFCC in payment of attorneys' fees for litigation related to the bonded contracts.[6] On May 18, 2007 SML filed a second supplemental disclosure statement further delineating the relationship between SML, Ohio Casualty and the debtor setting forth detailed information about the amount of attorneys' fees that Ohio Casualty had paid on behalf of the debtor.[7]

On May 17, 2006 SML filed its fourth interim application for fees, and two creditors, the Audubon Commission and Gandolfo Kuhn, filed a joint objection on the basis that SML was representing an interest adverse to the debtor's estate in contravention of 11 U.S.C. § 327(e). A hearing on the matter was held on June 27, 2007 and testimony and evidence were taken by the court.

**II.** **Legal Analysis**

    **A.** **Employment under section 327 of the Bankruptcy Code.**

Attorneys are employed by the trustee or debtor in possession under section 327 of the Bankruptcy Code.[8] Section 327(a) states:

---

[6] (P-346).

[7] (P-467).

[8] 11 U.S.C. § 101 *et seq.*

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Exceptions to this subsection (a) are found in two subsections, (c) and (e). Subsection (c) states:

> In a case under chapter 7,12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Subsection (e) states:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Although neither the application for employment nor the order granting the application specified under what section of the Bankruptcy Code SML sought approval of its employment application, upon review it seems clear to the court that employment was granted under § 327(e). SML had at that point only disclosed its prior representation of the debtor, and the employment application stated that SML sought approval only as special counsel to the debtor in the construction litigation matters.

The language of § 327(e) places three conditions on the attorney's employment: 1) the employment must be for a specified special purpose, and not for the general management of the debtor's bankruptcy; 2) the employment must be in the best interests of the estate, meaning that pursuit of the claim is justified by its merit and value and that the proposed attorney has expertise and familiarity with the claim; and 3) the attorney to be employed must not represent or

hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.[9]

The first two conditions are easily analyzed. First, in the instant case, it is clear that SML only represents the debtor for the specified special purpose of resolving issues related to the debtor's construction contracts, whether through litigation or settlement; the debtor retained separate bankruptcy counsel for the general management of the debtor's bankruptcy. Second, it is uncontested that SML specializes in construction litigation and represented the debtor in these matters prior to the filing of the Chapter 11 petition; the two claims that SML litigated in this court were of sufficient merit and value that the court finds that SML's employment was justified and in the best interests of the estate.

The third condition requires a more painstaking analysis. Because the Bankruptcy Code does not define the phrase "represent or hold any interest adverse to the debtor or to the estate," the Fifth Circuit has determined that this phrase means: 1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or 2) to possess a predisposition under circumstances that render such a bias against the estate.[10] The Fifth Circuit cautions, however, that this definition must be employed on a case by case basis by examining the specific facts of each case , "with attention to circumstances which may impair a professional's ability to

---

[9] 11 U.S.C. § 327(e); *In re West Pointe Properties, L.P.,* 249 B.R. 273, 284 (Bankr.E.D.Tenn. 2000).

[10] *In re West Delta Oil Company, Inc.,* 432 F.3d 347, 356 (5th Cir. 2005) (citing *In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds,* 75 B.R. 402 (D.Utah 1987)).

offer impartial, disinterested advice to his or her client."[11]

The court is certainly aware of the Fifth Circuit Court of Appeal's holding in *West Delta Oil Co.* that the standards for employment under § 327(e) are strict, and thus, the court should be "sensitive to preventing conflicts of interest and require a painstaking analysis of the facts and precise application of precedent when inquiring into alleged conflicts."[12] The court also finds helpful in its analysis of this case the viewpoint articulated in *In re Contractor Technology, Ltd.,* 2006 WL 1492250 (S.D.Tex.), where the court described the concept of adverse interest as encompassing motivation, i.e., "whether the attorney possesses a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors."[13] The *Contractor Technology* court cited the Second Circuit's *AroChem* opinion which concluded that "where the interest of the special counsel and the interest of the estate are identical with respect to the matter for which the special counsel is retained, there is no conflict and the representation can stand."[14] The court examines the foregoing while keeping in mind the exception embodied in § 327(c) that representation of a creditor does not disqualify an attorney from representing a debtor unless the employment constitutes an actual conflict of interest.

In the instant case, the alleged conflict is between SML's representation of the debtor in the adversary proceedings, i.e., the matter on which the attorney is to be employed, and SML's representation of Ohio Casualty, a creditor with an interest that Audubon and Kuhn claim is

---

[11] *West Delta Oil Co.,* 432 F.3d at 356.

[12] *Id.* at 355.

[13] *In re Contractor Technology, Ltd.,* 2006 WL 1492250 at *6 (S.D.Tex.).

[14] *In re AroChem Corp.,* 176 F.3d 610, 622 (2nd Cir. 1999). *See also Stoumbos v. Kilimnik*, 988 F.2d 949 964 (9th Cir. 1993).

potentially adverse to the estate, in the same adversary proceedings. To fulfill the mandate of the Fifth Circuit, the court must investigate the nature of the representation to determine whether an actual conflict exists with respect to the matter on which SML is employed.[15]

SML was retained to represent the debtor in the two adversary proceedings filed by the debtor against two project owners with whom the debtor had entered into construction contracts. Both of these contracts were bonded by Ohio Casualty. In one adversary proceeding, Roy Frischhertz Construction Company v. The Audubon Commission, Case No. 06-1011, Ohio Casualty was named as a defendant in Audubon's counterclaim. Further, Ohio Casualty stipulated in that case that in the event the debtor was found to have breached the contract and owe damages to Audubon for costs of completion under the contract that Ohio Casualty agreed to be liable to Audubon up to the penal sum of the bond.[16] In the second adversary proceeding, Roy Frischhertz Construction Company v. Jon A. Gegenheimer, Case No. 06-1028, Ohio Casualty was also named as a third party defendant and a state court suit brought against Ohio Casualty was consolidated with the main adversary proceeding. During the course of that trial, Ohio made no attempt to deny its liability under the bond if the debtor were found owing under the contract.

At the hearing on the fourth application for fees, the attorney for Audubon and Kuhn called to the stand Lloyd Shields, a partner at SML and the main trial attorney. Mr. Shields testified that there was no actual conflict between SML's representation of the debtor and Ohio

---

[15] 11 U.S.C. § 327(e); *West Delta Oil Co.*, 432 F.3d at 357 (special counsel employed under § 327(e) need only avoid possessing interests adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed).

[16] See (P-144) in Adv.P.No. 06-1011.

Casualty and that their interests in the suits before this court were aligned. Mr. Shields further testified that SML represented both the debtor and Ohio Casualty in the adversary proceedings because it was more economical than having two sets of attorneys litigate the same issues in the adversary proceedings. Audubon and Kuhn produced no evidence to contradict this evidence and the court found Mr. Shields' testimony to be credible.

The court finds that the evidence presented to the court showed no actual conflict exists at this time. The court is mindful, however, of the Fifth Circuit's admonishment in *West Delta Oil Co.* that the court's reliance on the scant evidence presented in that case to show the conflict of interest ignored the underlying realities of the factual situation.[17] Thus, the court looks beyond the evidence presented at the hearing in examining the potential conflict in the case before it. Shields testified under oath that it is not unusual for a surety and a contractor to be aligned in a case such as this. Both are potentially liable to the project owner, and if the litigation involving the project owner results in minimizing the obligation of the contractor, it also minimizes the liability of the surety. Nothing in the behavior of the parties presented to the court to date, either through an evidentiary hearing or otherwise, leads the court to suspect that SML's representation of both Ohio Casualty and the debtor for the purposes of these two adversary proceedings is adverse to the debtor or the debtor's estate. If SML is successful in the litigation, it minimizes the liabilities of both the debtor and Ohio Casualty.

Additionally, the court finds it important that Ohio Casualty is represented by other counsel in its claims against the debtor's estate. Similarly, the debtor is represented by its general bankruptcy counsel who is more than capable of objecting to Ohio Casualty's claims if

---

[17] *West Delta Oil Co.,* 432 F.3d at 357.

such objections are warranted. Finally, the court notes that this is an interim fee application and reminds the parties that these fees can later be challenged if an actual conflict develops or is shown to exist.

### B. Disclosure requirements under Bankruptcy Rule 2014.

Federal Rule of Bankruptcy Procedure 2014(a) sets forth the requirement that an application for employment shall contain a statement by the person to be employed disclosing that person's, "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed by the office of the United States trustee." The Fifth Circuit has held that although Rule 2014 does not explicitly require ongoing disclosure, "case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises."[18]

It is not disputed that in its initial application for employment SML failed to disclose that it had also represented and continued to represent Ohio Casualty, a creditor of the debtor. "Counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation."[19] Courts do retain discretion, however, in "determining whether the non-disclosure merits a law firm's disqualification."[20] Courts that disallow employment or deny fees

---

[18] *West Delta Oil Co.,* 432 F.3d at 355 (quoting *In re Metropolitan Environmental, Inc.,* 293 B.R. 871, 887 (Bankr.N.D.Ohio 2003)).

[19] *West Delta Oil Co.,* 432 F.3d at 355.

[20] *Burghoff v. Petit,* 2006 WL 4013729 (Bankr.S.D.Iowa 2006); *Best Craft General Contractor & Design Cabinet, Inc. v. Wong,* 239 B.R. 462, 470 (Bankr.E.D.N.Y. 1999); *In re Adam Furniture Industries, Inc.,* 191 B.R. 249 (Bankr.S.D.Ga. 1996).

generally do so because the law firm's undisclosed connection is material in some way to the firm's qualification to represent the debtor. Where, as here, the deficiency in reporting the facts to the court has not resulted in any actual conflict and has proved largely to be harmless, courts have often used their discretion to permit the representation and allow the requested fees.

Under the facts of this case, the court is inclined to allow the attorneys' fees. SML specializes in construction litigation; it is not a bankruptcy firm, and to the best of this court's knowledge has not previously appeared in bankruptcy court in this district. The court is cognizant of the fact that the process for obtaining approval for employment under the Bankruptcy Code is foreign to most non-bankruptcy counsel. While this does not excuse SML's failure to investigate and comply with bankruptcy procedure, the court is sympathetic to SML as this is a mistake made not infrequently by non-bankruptcy attorneys. It appears that SML attempted to represent the debtor to the best of its ability and in good faith. Further, the attorneys for SML who filed the initial application were not the same attorneys who subsequently tried the adversary proceeding and filed the fee application. SML filed supplemental disclosures after learning that it had an obligation to disclose its connection with Ohio Casualty. Contrary to the argument of Audubon and Kuhn, the court does not believe SML intended to conceal its relationship with Ohio Casualty. No actual conflict was found, and the court finds the error harmless and trusts that should SML ever decide to represent another client in bankruptcy as special counsel, it will have learned its lesson and disclose all connections requiring disclosure under Rule 2014.

    **C.**    **The objection that the fees are excessive.**

Audubon and Kuhn also argue that the fees requested by SML in the fourth fee

application, and overall in this case, are excessive.[21]  Although this issue was raised in the briefs and addressed at oral argument, the greater emphasis was on the issue of whether SML's representation of the debtor and Ohio Casualty in the adversary proceedings was proper. Accordingly, the court will reserve examination of whether the fees generated in this case are excessive until such time as it reviews SML's final fee application.

Accordingly, it is ORDERED that the fourth interim application for fees submitted by Shields Mott Lund is hereby GRANTED.

New Orleans, Louisiana, August 24, 2007.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

[21] The fourth interim fee application requests $181,386.25 in fees and $11,737.58 in costs as well as *nunc pro tunc* approval of an additional $87,425.79; the total amount of fees and costs requested to date, including those requested in the fourth interim fee application is $635,319.72.